**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KERRY JOHNSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:11-CV-4205-RDP** |
| | } | |
| **MOSSY OAK PROPERTIES, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**<u>MEMORANDUM OPINION</u>**

Before the court is Defendants' Motion for Partial Summary Judgment (Doc. #31), filed on June 12, 2012. The Motion (Doc. #31) has been fully briefed (Docs. #31, 33, 35) and was deemed submitted without oral argument on July 17, 2012. For the reasons outlined below, the court finds that the Motion for Partial Summary Judgment (Doc. #31) is due to be granted.

**I.       Procedural History**

Plaintiff Kerry Johnson ("Johnson" or "Plaintiff") commenced this action by filing a complaint in the Circuit Court of Sumter County on November 4, 2011. (Doc. #1, ¶ 1). The substance of Plaintiff's allegations relate to a contract dispute arising out of Plaintiff's business relationship with Defendants. (Doc. #1-1, Compl. at 1-11). Plaintiff's Complaint contains ten counts to relief. (*Id.* at 11-18). Plaintiff asserts various state law claims, including: breach of contract (Count I); violation of Ala. Code §§ 8-24-1 through 8-24-5 (1975) (Count II); fraud, misrepresentation, and suppression (Count III); promissory fraud (Count IV); equitable estoppel (Count V); quantum meruit (Count VI); unjust enrichment (Count VII); negligence and wantonness (Count VIII); accounting (Count IX); and conspiracy (Count X).

Defendants removed the action to federal court on December 14, 2011.  (Doc. #1).  In their notice of removal, Defendants asserted that diversity jurisdiction exists because the parties are completely diverse and the minimum amount in controversy is met.  (Doc. #1, ¶ 10).  For diversity of citizenship purposes, Plaintiff is a citizen of Missouri and Defendants are citizens of either Delaware or Mississippi.  (Doc. #1, ¶¶ 11-16).  Defendants assert the amount in controversy is met based on the amount Plaintiff claims he is owed and based upon Plaintiff's claim under the Alabama State Sales Representative's Commission Contracts Act, Ala. Code § 8-24-1 et seq. (1975) (the "Act"), which trebles damages, attorney's fees, and costs.[1]  (Doc. #1, ¶¶ 22-23).

On December 21, 2011, Defendants filed a Motion to Dismiss Count II of Plaintiff's Complaint alleging violations of the Act.  (Doc. #5).  Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion to Remand on January 13, 2012.  (Doc. #8).  On January 24, 2012, Defendants filed a Reply to Plaintiff's Opposition (Doc. #16) and a Motion to Strike (Doc. #15).  After a scheduling conference on March 13, 2012, the court permitted the parties to conduct limited discovery on the issue presented in Defendants' Motion to Dismiss (Doc. #5).  The court ordered that the parties file all potentially dispositive motions directed to Count II of the Complaint by May 29, 2012.  (Doc. #21).  This deadline was subsequently extended to June 12, 2012 (Doc. #25) at which time Defendants filed the Motion for Partial Summary Judgment currently under consideration.  Defendants also filed evidence in support of the motion.[2]  (Docs. #31-

---

[1]Defendants also argued that based on the formula set out in the Complaint, a disputed claim of at least $78,876.22 exists. (Doc. #1, ¶ 22). Defendants acknowledged, and Plaintiffs did contend, that the disputed claim is only $46,127.94 because Defendants had already paid Plaintiff $32,748.28.  (Doc. #1, ¶23 n. 2; Doc. #8).  However, Defendants asserted that even if those previous payments were deducted, the $46,127.94 amount would be trebled to determine the amount in controversy, thus resulting in a claim in excess of $75,000.  (Doc. #1, ¶23 n. 2).

[2]Defendants submitted the following evidence: (1) Declaration of Lannie Wallace and attached exhibits (Exhibit 1) and (2) Defendants' Responses to Plaintiff's Special Interrogatories and Requests for Production (Exhibit 2).

32).  On July 3, 2012, Plaintiff filed a response in opposition to the motion along with supporting evidence.[3]  (Doc. #33).  Defendants filed a reply brief to Plaintiff's opposition on July 17, 2012. (Doc. #35).

## II.    Legal Standards for Evaluating a Summary Judgment Motion[4]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine

---

[3]Plaintiff submitted a Declaration of Kerry Johnson (Exhibit A) and an attached exhibit.

[4]Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even considering the 2010 amendments, "the standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 Advisory Committee's Note (2010 Amendments).

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out

4

to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.

If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   Relevant Undisputed Facts[5]

On September 28, 2006, Johnson entered into a Development Agent Agreement ("Agreement") with Defendant Mossy Oak Properties ("Mossy Oak"). (Doc. #33, Ex. A, Johnson Decl. at ¶ 1). Defendants Toxey Haas ("Haas") and Lonnie Wallace ("Wallace") were present at the time. (*Id.* at ¶ 2). Mossy Oak kept the original signed Agreement. (Doc. #33, Ex. 1, Agreement at 6-7). Sections 2 and 4 of the Agreement describe in detail Johnson's duties. (Doc. #33, Ex. 1, Agreement at 2, 4). In Section 2, the Agreement provides in part:

---

[5]The court initially notes that Plaintiff's statement of facts in his reply brief do not comply with the court's Initial Order. (Doc. #4). Appendix II outlines the summary judgment requirements and requires the opposing party's statement of facts to be divided into three parts (response to movant's statement, additional undisputed facts, and additional disputed facts). (*See* Doc. #4). The court reserves the right *sua sponte* to strike any statements of fact or responsive statements that fail to comply with these requirements. (*See* Doc.#4). The court will not do so here. In their reply brief, Defendants assume the allegations contained in Plaintiff's Complaint and the "Facts" section of his opposition to be true and undisputed. (Doc. #35). Thus, the court will not strike Plaintiff's statement of facts for purposes of summary judgment. As Defendant's suggest, the court will consider the factual allegations in Plaintiff's Complaint and his opposition as undisputed for summary judgment purposes. If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party. *See Fitzpatrick*, 2 F.3d at 1115.

a.      Johnson shall be responsible for all activities involved in the development, supervision and servicing of Mossy Oak Properties franchises within the Assigned Territory. . .;

f.      Johnson shall devote adequate time to developing and servicing a network of the Company's franchisees in the Assigned Territory;

g.      Johnson shall assist the company in its efforts to maintain high and uniform standards of cooperation, integrity and commitment at all Mossy Oak Properties franchise offices within the Assigned Territory; thus protecting and enhancing the reputation of Mossy Oak Properties system and the demand for its brokerage services. . . .

k.      [I]n connection with the sale of Mossy Oak Properties franchises to prospective franchisees within the Assigned Territory, Johnson agrees to utilize the Company's offering circular as changed and updated from time to time; . . . .

(Doc. #33, Ex. 1, Agreement at 2, 3).  Additionally, in Section 4, the Agreement states that Johnson

and Mossy Oak share the following duties:

a.      [They] shall assist all potential franchisees in the Assigned Territory in evaluating prospective sites for franchise offices to be submitted by such franchisee to the Company for final approval;

b.      assist franchisees in the Assigned Territory in adapting the Company's policies for the interior design and layout, fixtures, furnishings, signs and equipment to the franchises premises in compliance with applicable local and/or state laws, regulations or ordinances, it being understood that the cost of such adaptation and modification to the Company's plans shall be borne by the franchisee.  Any such changes or adaptations made with the assistance of Johnson shall be approved in final form by the Company;

c.      establish a training program and provide training to Mossy Oak Properties franchisees within the Assigned Territory required by the Franchise Agreement to be performed by the Company;

d.      provide all pre-opening and opening assistance for offices in the Assigned Territory;

6

e.      provide recommended computer hardware and software and internet requirements for franchisees within the Assigned Territory as a part of its duties under the respective Franchise Agreements and assist such franchisees in understanding, installing and implementing such requirements;

f.      be available at all reasonable times to franchisees within the Assigned Territory to assist with operating problems encountered by such franchisees;

g.      conduct periodic visits to and inspections of the franchise brokerage offices within the Assigned Territory, which inspections shall take place no less often than semi-annually, unless mutually agreed upon between the parties for a longer time period; and

h.      provide initial and continuing advisory assistance to franchisees within the Assigned Territory in the operation of the licensed Mossy Oak Properties business as the Company deems advisable and necessary in order to maintain the effective operation of real estate brokerage offices.

(*Id.* at 5).

The Agreement also provides a detailed fee/commission structure to be paid to Johnson based on the number of franchises he developed and the revenues and royalties generated by each franchise. Specifically, the Agreement required Mossy Oak to pay Johnson commissions of 33% of the franchise fee for the first three (3) franchise sales, 40% for the next three (3) franchise sales, and 50% for more than six (6) franchise sales. (*Id.* at 6). In addition, the Agreement required Mossy Oak to pay Johnson a recurring royalty fee of 7% of gross commissions and a royalty commission of 25% of Mossy Oak's royalty fees for Year 1 of each new franchisee's operations, 10% of Year 2 of each new franchisee's operations, 7% after Year 2 of each new franchisee's operations, and 10% of amount that exceeds the prior year for royalty fees that exceed a franchisee's prior

calendar year's production.  (*Id.*).  Section 6 of the Agreement states that Plaintiff was to be paid these amounts "for franchises sold and developed within the Assigned Territory."  (Doc. #33, Ex. 1, Agreement at 6.a.).  Mossy Oak did not pay Johnson what he was owed pursuant to the express terms of the Agreement.  (Doc. #33, Ex. A, Johnson Decl. at ¶ 5).  Mossy Oak also failed to pay Johnson what he was owed pursuant to its promises outside the express terms of the Agreement. (*Id.*).

During his employment with Mossy Oak, the company provided franchise agreements to Johnson  to present to potential franchisees which included multiple references to products.  (Doc. #33, Ex. A, Johnson Decl. at ¶ 6; Doc. #31, Ex. A, Franchise Agreement).  The franchise agreement refers to the term "product" or "products" a minimum of 20 times.  (Doc. #31, Ex. A., Franchise Agreement).    In addition, Mossy Oak trained and told Johnson to tell potential franchise owners/buyers that the resale of a  franchise for profit was available to them. (Doc. #33, Ex. A, Johnson Decl. at ¶ 7).  Mossy Oak also told Johnson to use the resale of franchises as a selling point to buyers in order to explain to them that they could consider the purchasing of the franchise as an investment for resale opportunities and that Mossy Oak has allowed such sales of franchises. (*Id.*).

## IV.    Analysis

### A.    Applicability of the Act is a Question of Law

Here, there are no genuine issues of material fact, and the key issue is whether the Act applies in this case.  That issue turns on a question of law for the court to decide.  *See RMC & Assocs., Inc., v. Beasley*, 958 So. 2d 879, 882-82 (Ala. Civ. App. 2006) ("Whether the Act applied to the undisputed facts was a question of law. . . .").

**B.     The Act Does Not Apply Because Mossy Oak is Not a "Principal" and Johnson is Not a "Sales Representative" Within the Meaning of the Act**

In order for the Act to apply, Mossy Oak must meet the definition of "principal" and Johnson must meet the definition of "sales representative."  Because neither Moss Oak nor Johnson meet their respective definitions under the Act, it does not apply to this action.  Section 8-24-1, Alabama Code 1975 provides in pertinent part:

> As used in this chapter, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise: . . .
>
> (2) Principal. Any person who does all of the following:
>
> > a. Engages in the business of manufacturing, producing, importing or distributing a product or products for sale to customers who purchase the product or products for resale.
> >
> > b. Utilizes sales representatives to solicit orders for the product or products.
> >
> > c. Compensates the sales representatives, in whole or in part, by commission.
>
> (3) Sales Representative.  Any person who engages in the business of soliciting, on behalf of a principal, orders for the purchase at wholesale of the product or products of the principal but does not include a person who places orders or purchases for his or her own account for resale, or a person engaged in home solicitation sales. . . .

Ala. Code. § 8-24-1(2) to (3).  Mossy Oak does not meet the definition of "principal" and Johnson does not meet the definition of "sales representative" because Moss Oak does not sell a product at the wholesale level.

### 1.     Mossy Oak Does Not Sell a Product

Pursuant to the plain text of the relevant statute, the definitions of both "principal" and "sales representative" require that a "product" be involved in the sale or transaction. Ala. Code § 8-24-1(2)-(3).  That is, the "principal" must be "in the business of manufacturing, producing, importing or

distributing a product or products," and the "sales representative" must be soliciting orders for that "product." *Id.*  The parties disagree as to whether the term "product" includes intangible goods. Defendants assert that the word "product" only refers to a tangible good.  (Doc. #31).  Plaintiff contends that the term "product" should include intangibles–such as the franchises at issue here. (Doc. #33).

The Act does not define the term "product."  Thus, the court must give effect to the intent of the legislature and must give the term "product" it's "natural, ordinary, and commonly understood meaning."  *See IMED Corp. V. Sys. Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992). Additionally, "where plain language is used [the court] is bound to interpret that language to mean exactly what it says."  *Id.*  To determine whether the term "product" as used in the Act has a plain and unambiguous meaning, the court refers "to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Bautista v. Star Cruises*, 396 F. 3d 1289, 1295 (11th Cir. 2005).

Reading the word in context of the statutory language of Section 8-24-1, the court finds that the term "product" refers only to tangible goods.  Sales subject to the Act must be made at the wholesale level.  *See* Ala. Code § 8-24-1(3).  A wholesale transaction generally involves the sale of a tangible good.  *See Black's Law Dictionary* (9th ed. 2009) (defining "wholesale" as the sale of goods or commodities usually to a retailer for resale, and not to the ultimate consumer"); *see also* Ala. Code § 40-23-1(a)(9) (Alabama's tax code referring to the term "wholesale sale" as "a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale").  Reading the term "product" in conjunction with the requirement that sales subject to the

Act be made at the wholesale level, the court concludes that the word "product" refers to the sale of tangible goods.  Thus, Mossy Oaks intangible franchise rights are not a "product" for purposes of the Act; therefore, the parties do not fall within the statute's definitions of "principal" and "sales representative."

The court's conclusion that the plain language of the term "product," read in context with other provisions of the Act, suggests that only tangible goods are covered is further supported by the lack of Alabama case law applying the Act to the sale of a franchise agreement or any intangible good or product.  Neither party has cited (and the court is unaware of) any such case law.  In fact, the cases to which the Alabama Supreme Court and the Alabama Court of Civil Appeals have applied the Act all involve tangible goods.  *See e.g., Ex Parte Tahsin Indus. Corp. U.S.A.*, 4 So. 3d 1121, 1122 (Ala. 2008) (sale involved outdoor apparel and sports gear); *RMC & Assocs, Inc.*, 958 So. 2d at 880 (sale involved industrial pipeline products such as valves, expansion joints, and coatings);  *Lindy Mfg. Co v. Twentieth Century Mktg., Inc.*, 706 So. 2d 1169 (Ala. 1997) (sale involved electronic component parts)

Plaintiff represents that the Supreme Court of Alabama has routinely held that intangible products are considered products under Alabama law.  However, the cases cited by Plaintiff in support of this position[6] are inapposite and unpersuasive.  These cases do not *hold* that various intangibles are in fact "products" under Alabama law.  Moreover, these cases do not analyze the

---

[6]*See Dawsey v. Raymond James Financial Services, Inc.*, 17 So. 3d 639, 639 (Ala. 2009) (insurance company and financial adviser sued in connection with sale of financial "product"); *Ex parte Allianz Life Ins. Co. of North America*, 25 So. 3d 411, 412 (Ala. 2008) (annuity insurance policy); *Ex parte John Alden Life Ins. Co.*, 999 So. 2d 476, 479 (Ala. 2008) (group health insurance); *Waddell & Reed, Inc. V. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1156-57 (Ala. 2003) (inland marine insurance); *Alfa Life Ins. Corp. v. Hughes*, 861 So. 2d 1088, 1091 (Ala. 2003) (life insurance); *Ex parte Life Ins. Co. Of Georgia*, 810 So. 2d 744, 746 (Ala. 2001) (health insurance).

meaning of the term "product" as used in the context of the Act (or any other related context for that matter).[7]

Because the court is unaware of any Alabama case law applying the Act to the sale of an intangible franchise, the court has examined relevant authority from other states that have similar versions of the Act and use a definition of "principal" that is virtually identical to Alabama's. *See Bowman v. PHP Cos., Inc.*, No. 3:04-CV-114; 2005 U.S. Dist. LEXIS 44469, at *30-*32 (E.D. Tenn. Nov. 8, 2005) ("holding that "a 'product' under [the Act] does not include an intangible item…."); *Nicor Energy v. Dillon*, No 03 C 1169, 2004 U.S. Dist. LEXIS 86, at *4-*5 (N.D. Ill. Jan. 7, 2004) ("The term 'product' as used in the Act refers only to purveyors of tangible goods…." (internal quotations omitted))*; Wujec v. AT&T Corp.*, No. 03 C 7671, 2004 U.S. Dist. LEXIS 797, at *3-*6 (N.D. Ill. Jan. 21, 2004) ("Given the plain language of the Act, we believe that … only sellers of tangible goods qualify as 'principals.'"); *Klapp v. United Ins. Group Agency, Inc.*, 674 N.W. 2d 736, 737-40 (Mich. Ct. App. 2003) ("The terms 'manufacture,' 'produce,' 'import,' and 'distribute' are identifiable with tangible, manufactured goods, not with intangible items….") *Formestic, Inc. v. Residential Warranty Corp.*, No. 96 C 6638, 1997 U.S. Dist. LEXIS 1010, at *5-*10 (N.D. Ill. Feb. 3, 1997) (warranty policies were intangible property and thus not a 'product' under the Act); *Kenebrew v. Connecticut General Life Ins. Co.*, 882 F. Supp. 749, 752-754  (N.D. Ill. 1995); *Am.*

---

[7]Indeed, four of the cases cited by Plaintiff use the term "product" only when discussing a plaintiff's allegations, never addressing or analyzing whether contractual rights actually can constitute a "product" for any particular legal purpose. *See Dawsey*, 17 So. 3d at 639; *Ex Parte Allianz Life Ins. Co. of N. Am.*, 25 So. 3d at 412; *Ex Parte John Alden Life Ins. Co.*, 999 So. 2d at 478; *Ex Parte Life Ins. Co. of Georgia*, 810 So. 2d at 746. One of the remaining two cases merely uses the term when quoting from the plaintiff's own documents. *See Alfa Life Ins. Corp.*, 861 So. 2d at 1091. In the final case,  the court did not hold that intangible contract rights are a "product" for purposes of an Alabama statute or any other Alabama law. *See Waddell & Reed, Inc.*, 875 So.2d at 1143.  Rather, the court, while addressing a completely unrelated legal issue, quoted a Georgia opinion referring offhand to marine insurance "products," without any analysis. *Id.* at 1152-59.

*Delta Tech., Inc. v. RK Elec. Concepts*, 647 A.2d 1344, 1346-47 (N.J. Super. Ct. App. Div. 1994) (requiring "tangible products so as to bring the transaction within the ambit of the Act."); *cf. Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, 779 F. Supp. 2d 416, 430-32 (E.D. Pa. 2011) (requiring a "tangible good or product" to satisfy the definition of a "retailer" under the statute); *United Prods. Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 564 (E.D. Pa. 2000) (same).

In *Kenebrew*, the court held that insurance policies were not a "product" under Illinois' version of the Act.  *Kenebrew*, 882 F. Supp. at 752-54.  Like Alabama's Act, Illinois' version defines a "principal" as one who "manufacturers, produces, imports or distributes a product for sale."  820 Ill. Comp. Stat. 120/1 (West 2012).  In a detailed discussion of the issue, the court determined that "the most reasonable construction of the statute's plain meaning is not to include intangibles . . . because of the context in which the term 'product' is found."  Id. at 754. The court noted that the statute did not use "broad or openended language; rather it provide[d] a defined context in which to interpret the word 'product.'" *Id*.  The court stated that the terms "'manufacture,' 'produce,' 'import,' and 'distribute' are identifiable with tangible, manufactured goods, not with intangible items or services." *Id*.  The court concluded "[a]n intangible item or service … simply does not fit within the plain meaning of the wording of the statute." *Id*.  This court does the same.

Here, Johnson sold Mossy Oak franchises.  The Agreement between the parties does not refer to the sale of products by Mossy Oak to its franchisees.  Johnson attempts to create an issue of material fact by relying on the appearance of the word "product" in the franchise agreements that he presented to potential franchisees.  (Doc. #33; *Id.*, Johnson Decl. at 6).  However, the franchise agreements mention of the term "products" does nothing to change the undisputed fact that the Agreement Johnson and Mossy Oak entered into provides commission for the sale of intangible

13

franchises–not for the sale of tangible products.  The franchise agreements make clear that the word "product" refers to items that Mossy Oak makes available to franchisees for use in their business. (Doc. #31-2; Defs' Resp to Pl.'s Special Interrog. 3).  The franchise agreements do not refer to items that are sold to the franchisee for resale to a consumer.  (*Id.*).  Because the Act requires the sale of a tangible good and Mossy Oak's franchises are not considered "products" under the Act, it follows that Mossy Oak does not meet the definition of a "principal" and Johnson does not meet the definition of a "sales representative," and the Act does not apply here.

### 2.      Alternatively, Even if a Mossy Oak Franchise is Considered a Product, it is Not Sold at the Wholesale Level

Even assuming a Mossy Oak franchise is considered a "product" under the Act, which it is not, the Act does not apply here because the franchise is not sold at the wholesale level.  In order for Mossy Oak to meet the definition of a "principal" and in order for Johnson to meet the definition of "sales representative" under the Act, Mossy Oak must sell "to customers who purchase the product or products for resale" and Johnson must solicit "orders for the purchase at wholesale of the product. . . ."  *See* Ala. Code § 8-24-1(2) to (3).  Through Johnson, Mossy Oak entered into franchise agreements directly with an "end-user"– the franchisee.  (Doc. #31, Ex. 1, Wallace Decl. at 6). Furthermore, Moss Oak franchise agreements contain language which expressly prohibits a franchisee from "wholesaleing" franchises.  (Doc. #31, Ex. A to Ex. 1, Moss Oak Franchise Agreement, § 14.1-14.6).  Under the terms of the franchise agreements, a franchisee represents that he or she is "not obtaining this Franchise for speculative purposes" and that he or she has "no present intention to sell or transfer or attempt to sell of transfer the Franchise in whole or part."  (*Id.*, § 13.2). Therefore, even if considered a "product" for purposes of the Act, Mossy Oak franchises are not sold

at the wholesale level and Johnson could not have sold franchises to customers for resale. *See RMC & Assocs., Inc.*, 958 So. 2d at 883 (finding that the Act did not apply because the product was sold to an end user and not to a customer who purchased the product for resale).

Johnson argues that Mossy Oak "trained and told [him] to represent to potential franchise owners/buyers that the resale of a franchise for profit was available [and. . . ] that they could consider the purchasing of the franchise as an investment for resale opportunities. (Doc. #33, Ex. A, Johnson Decl. at 7). However, and in any event, this statement alone does not convert the selling of a franchise into a wholesale transaction involving the purchase of the franchise in quantity for the purpose of resale to consumers. That one end-user could ultimately sell the franchise to another end user does not change the terms of the franchise agreements that require franchisees to represent they are not buying a Mossy Oak franchise with a present intention to sell or transfer the franchise in whole or part. Therefore, even if a Mossy Oak franchise is considered a "product" under the Act, the franchise is not sold at the wholesale level. Thus, the Act does not apply for this alternative reason.

## V.    Conclusion

For the reasons stated above, there being no dispute as to any material fact, Defendants' Motion for Partial Summary Judgment (Doc. #31) is due to be granted. A separate order will be entered dismissing Count II of Plaintiff's Complaint.

**DONE** and **ORDERED** this ____27th____ day of November, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE